IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| PETER L. TURNER, #687552 | § | |
| VS. | § | CIVIL ACTION NO. 9:09cv81 |
| NATHANIEL QUARTERMAN, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Peter L. Turner, an inmate confined at the Eastham Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on May 8, 2009. After reviewing the complaint, the Court decided to conduct an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted on September 3, 2009. A *Spears* hearing is a proceeding which allows a litigant to offer sworn testimony in support of his allegations. The Fifth Circuit has stated that a *Spears* hearing is appropriate "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. It serves to implement the congressional intent of meaningful access to court for indigent litigants, and also to allow the district court to winnow out the wheat from the unusual amount of chaff necessarily

presented in a system which fosters *pro se* litigation. *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (*citing Watson v. Ault*, 525 F.2d 886, 890 (5th Cir. 1975). Regional Grievance Coordinator Ginger Lively, Assistant Warden Dewayne Dewberry and Nurse Tara Patton attended the hearing in order to answer any questions the Court had concerning prison policy or information contained in the Plaintiff's records.

The Plaintiff complained about a fall that occurred while he was being transported on a pig bus from the Grower Barn to the Trusty Camp at the Eastham Unit on or about August 1, 2008. The pig bus was driven by Officer Kennedy. The pig bus was designed to transport pigs, as opposed to people. There was a rail that divided male and female pigs. Some of the inmates riding on the bus sat on the railing, but the Plaintiff stood at the back of the bus. The Plaintiff testified that there was pig waste on the floor of the bus. He lost his footing and fell during a trip. He told Officer Kennedy that he had fallen after they returned to the Trusty Camp. Officer Kennedy told him that he did not look injured and to sit on the steps of the bus on the way back to the Grower Barn. The Plaintiff testified that Officer Kennedy did not intentionally drive rough nor try to make him fall. He talked to the Captain after the incident, and it was the last time he was transported in a pig bus. The Plaintiff testified that the issue at hand concerned safety, and he sued Officer Kennedy for causing the fall. He sued Director Quarterman because Officer Kennedy worked under him. He testified that Quarterman had no personal involvement in the matter.

The Plaintiff testified that his back was injured during the fall. He gave the Court permission to review his prison records concerning the incident. The response to his Step 1 grievance indicated that Officer Kennedy denied he was speeding. The response further noted that Officer Kennedy asked him if he needed medical assistance, and the Plaintiff responded that he was "okay." The

response to the Step 1 grievance advised him to submit a sick call request if he was having back problems.

The Plaintiff's medical records reveal that the Plaintiff was examined by Nurse Practitioner King on August 15, 2008. The Plaintiff complained about burning pain in the neck area and lower back. He stated that he could not sleep for more than four hours. He was wondering if he needed a spinal tap and whether he should be medically unassigned for work purposes. He was prescribed Meloxicam and Nortryptiline for pain. He was told that there was no medical indication for making him medically unassigned and that a spinal tap was inappropriate. The Plaintiff was seen again for pain on August 29, 2008. Additional medication was prescribed by Nurse Practitioner Hough. He was seen another time by Nurse Practitioner Hough on September 29, 2008. He noted that the drugs wore off easily, and he was wondering if the Nortryptiline dosage should be increased. A new prescription was written for the drugs, although the dosages were kept the same. X-rays were ordered. X-rays were made on October 7, 2008. Dr. J. Baxt, a radiologist, observed mild anterior spondylosis at the C5-C6 and C6-C7 levels. He concluded that the disc spacing appeared relatively well maintained and that there was mild degenerative changes in the cervical spine (neck).

The Supreme Court has held that many acts that might constitute a violation of state tort law do not amount to constitutional violations. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). *See also Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). In this Circuit, before a plaintiff may maintain a civil rights suit, he must show an abuse of governmental power that rises to a constitutional level. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019 (1981). He must allege a deprivation of a federally protected right in order to set forth a *prima facie* case. *Maine v. Thiboutot*, 448 U.S. 1 (1980).

It is well settled that negligence on the part of prison officials does not give rise to civil rights claims. *See Daniels v. Williams*, 474 U.S. 327 (1986); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988). In *Daniels*, the Supreme Court held that claims originating from a jailer leaving a pillow on the floor and a prisoner slipping and falling over the pillow constitutes a state tort claim for negligence and does not amount to a civil rights claim under 42 U.S.C. § 1983. The Fifth Circuit has repeatedly held that claims involving a prisoner slipping and falling do not rise to the level of a constitutional violation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999); *Marsh v. Jones*, 53 F.3d 707, 712 (5th Cir. 1995).

The Fifth Circuit discussed farm work conditions in the Texas prison system in *Clarke v. Collins*, 5 F.3d 1494, 1993 WL 391362 (5th Cir. 1993) (unpublished table decision). The Fifth Circuit noted that the plaintiff in that case complained about uncomfortable conditions, fire ants, poison ivy, cold weather and cotton picking. The Fifth Circuit explained that the conditions had to amount to cruel and unusual punishment in order to state a constitutional violation under the Eighth Amendment. *Id.* at *1. The conditions complained about by the plaintiff were described as "simply part of working the agricultural line. As such, they represent 'a de minimis level of imposition with which the Constitution is not concerned.'" *Id.* at *2.

Safety issues under the Eighth Amendment involving prisoners were discussed by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994). The Supreme Court specified that prison officials are not responsible for every injury suffered by a prisoner. *Id.* at 834. Officials are not liable for being negligent. *Id.* at 835. Instead, the standard to employ is whether prison officials were "deliberately indifferent" to the safety needs of an inmate. *Id.* at 834. "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards

4

an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The Fifth Circuit has strictly adhered to the holding in *Farmer v. Brennan* in discussing injuries suffered by Texas prison inmates on prison buses. One such case was *Wyatt v. Smith*, No. 08-20196, 2009 WL 1321018 (5th Cir. May 13, 2009). An inmate was burned after a tire blew out in a bus, and the transportation officers failed to stop when they noticed smoke coming from the bus. The Fifth Circuit held that the evidence did not show that the officers actually knew that inmates faced a substantial risk of serious harm based on the defect in the bus and deliberately ignored that risk. *Id*. at *1. The evidence did not show that they were deliberately indifferent. *Id.* Instead, the evidence, at best, showed that they were negligent, and negligence does not rise to the level of a constitutional violation. *Id.* In another case involving injuries on a bus, the Fifth Circuit held that officers were not liable when an inmate was beaten by other inmates on a bus since they were not aware that the inmate was in danger and took no steps to protect him. *Taylor v. Vance*, 172 F.3d 869, 1999 WL 129931 (5th Cir. Feb. 11, 1999) (unpublished table decision). The Fifth Circuit described the actions of the officers as being negligence, at best, and not a basis for a meritorious federal civil rights lawsuit. *Id.*

In the present case, the Plaintiff was expected to perform work in a prison agricultural setting. There is no indication that Officer Kennedy had any reason to believe that the Plaintiff faced a substantial risk of serious harm by being transported on the pig bus and that he ignored that risk. After being told about the fall, Officer Kennedy asked the Plaintiff if he needed medical attention. After the Plaintiff told him that he was okay, Officer Kennedy told him to sit on the steps of the bus

5

on the way back to the Grower Barn. Officer Kennedy's actions do not support an inference of deliberate indifference. At best, his actions may be described as negligence, which does not provide a basis for a meritorious civil rights lawsuit.

With respect to the Plaintiff's claims against Director Quarterman, the Court notes that in order to successfully plead a cause of action in a civil rights case, he must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Director Quarterman was sued because of his supervisory role, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied.

As a final matter, the Court notes that the Plaintiff's lawsuit does not concern the medical care he received for his injuries. Nonetheless, the medical records reveal that he received medical care, including medication and x-rays, when he complained about pain in his neck and back. There is no indication that anyone was deliberately indifferent to his medical condition.

In conclusion, the facts as alleged and developed do not satisfy the constitutionally mandated standard of deliberate indifference. The facts as alleged and developed fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the civil rights complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). It is further

**ORDERED** that all motions not previously ruled on are **DENIED**. It is finally

**ORDERED** that a copy of this opinion shall be sent by the Clerk to the Administrator of the Strikes List for the Eastern District of Texas.

So **ORDERED** and **SIGNED** this **3** day of **September, 2009.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE